1
2
3
4
5

**CAROL A. SOBEL** SBN 84483
**MONIQUE A. ALARCON** SBN 311650
725 Arizona Avenue, Suite 300
Santa Monica, CA 9040
t. 310.393.3055
e. carolsobel@aol.com
e. monique.alarcon8@gmail.com

6
7

Attorneys for Plaintiff

8
9

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10

| | Case No.:   2:18-CV-07670-CAS-PLA |
|---|---|

11
12
13
14
15
16
17
18

REX SCHELLENBERG, an individual

Plaintiff,

v.

The CITY OF LOS ANGELES, a municipal entity; DOES 1-10,

Defendant.

**FIRST AMENDED COMPLAINT**

42 U.S.C. § 1983: Fourth, Fifth, and Fourteenth Amendments; ADA
Cal. Const. Article 1, §§ 7, 13, 19;
Cal. Civ. Code § 51
Cal. Civ. Code § 52.1
Cal. Civ. Code § 2080 et seq.

**ACTION FILED: SEPTEMBER 3, 2018**

19
20
21
22
23
24
25
26
27
28

## JURISDICTION AND VENUE

1.      This is an action for injunctive relief, declaratory relief, and damages pursuant to 42 U.S.C. § 1983 based upon the continuing violations of Plaintiff's rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and California constitutional and statutory law.  Jurisdiction exists pursuant to 28 U.S.C. § 1331 and 1343 based on questions of federal constitutional law and 42 U.S.C. § 1983.  Jurisdiction also exists under the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as it arises from the same case or controversy as Plaintiff's federal claims.

2.      Venue is proper in the Central District of California pursuant to 28 U.S.C. §1391(b) as all parties reside in the Central District and the events and conduct complained of herein all occurred in the Central District.

## PRELIMINARY STATEMENT

3.      In 2012, the Ninth Circuit upheld a preliminary injunction in *Lavan v. City of Los Angeles*, 693 F.3d 1022 (9th Cir. 2012), 133 S.Ct. 2855 (2013) cert denied.  *Lavan* challenged the enforcement of an earlier version of Los Angeles Municipal Code § 56.11, proscribing the placement of any personal property on public property.  *Lavan v. City of Los Angeles*, 797 F.Supp.2d 1005 (C.D. Cal. 2011).  In *Lavan*, the district court enjoined the City from seizing property of unhoused individuals without due process notice requirements unless it is abandoned, evidence of a crime or creates an immediate public hazard.  The injunction also barred the City from summarily destroying seized property and ordered the City to store the property for 90 days, consistent with state law.   In affirming the rights of the plaintiffs in *Lavan*, the Ninth Circuit underscored that the "simple rule [i.e. notice and an opportunity to be heard by an impartial tribunal] holds whether the property in question is an Escalade or a [tent], a Cadillac or a cart."  693 F.3d at 1032.

4.      The City of Los Angeles has been sued repeatedly to stop the unlawful seizure and summary destruction of the personal property of homeless individuals. *See e.g., Bennion v. City of Los Angeles*, LASC Case C637718 (1987); *Justin v. City of Los Angeles*, 2000 U.S. Dist. LEXIS 17881; CV-00-12352 LGB (CD Cal. 2000); *Lavan v. City of Los Angeles*, 797 F. Supp. 2d 1005 (CD Cal. 2011); aff'd, 693 F.3d 1022 (9th Cir. 2013).  It has also been sued twice to challenge the same practices in the Venice area.  The most recent injunction issued in *Mitchell v. City of Los Angeles*, No. 16-cv-01750 SJO (GJSx) (C.D. Cal. 2016) [Dkt. 51 (Apr. 13, 3016)].  In each instance, the federal courts blocked the seizure and immediate destruction of personal property without due process.

5.      Despite the repeated decisions from the federal court holding that homelessness is not a crime, the City continues the same unlawful policy and practice.

## PARTIES

**PLAINTIFF:**

**Rex Schellenberg**

6.      Plaintiff REX SCHELLENBERG is a 78-year-old chronically homeless and physically disabled individual residing on the streets of Los Angeles. His sole source of income is Social Security Disability Insurance (SSDI).  Given his limited fixed income, he is unable to secure appropriate affordable housing in the City.

7.      Mr. Schellenberg became homeless in the early 1990s, after the Hollywood home he was renting was sold and he was forced to move.  Even then, he had limited income and could not afford to rent at another location.  He began living in his recreational vehicle (RV) on the streets of Los Angeles.  For some period of time, he lived in the vehicle in a mobile home park, but his employment was precarious and after a couple of years he could not pay the fees to rent a space

at the mobile park either.  Mr. Schellenberg eventually lost his vehicle and began living on the streets.

8.     In 2005, Mr. Schellenberg was violently assaulted by an individual and suffered a severe spinal injury.  As a result of his injuries, he began receiving SSDI benefits.

9.     Mr. Schellenberger lives in the San Fernando Valley near the intersection of Balboa and Nordhoff Boulevards.  On or about July 14, 2017, Defendants confiscated and summarily destroyed Mr. Schellenberg's property that was neatly stored on a public sidewalk.

**DEFENDANTS:**

10.     Defendant **CITY OF LOS ANGELES** is a municipal entity organized under the laws of the State of California with the capacity to sue and be sued.  Liability under California law for Defendant City of Los Angeles is based in whole or in part upon California Government Code §§ 815.2 and § 920, and/or Civil Code §§ 43, 51, 51.7, and/ or 52.1.  Liability under federal law for all government-entity employees is based upon 42 U.S.C. § 1983.  The departments of the City of Los Angeles include, among others, the Los Angeles Police Department and the Department of Public Works, Bureau of Sanitation, employees of which committed the acts complained of herein.

11.     The Defendant City, its employees and agents, participated personally in the unlawful conduct challenged herein and, to the extent that they did not personally participate, authorized, acquiesced, set in motion, or otherwise failed to take necessary steps to prevent the acts that resulted in the unlawful conduct and the harm suffered by Plaintiff.  Each acted in concert with each other.  The challenged acts caused the violation of Plaintiff's[2] rights.

12.     The identities and capacities of Defendants **DOES 1 through 10** are presently unknown to Plaintiff, and on this basis, Plaintiff sues these Defendants by fictitious names.  Plaintiff will amend the Complaint to substitute the true

names and capacities of the DOE Defendants when ascertained.  Plaintiff is informed, believes, and thereon alleges that DOES 1 through 10 are, and were at all times relevant to this complaint, employees and/or agents of the Defendant CITY OF LOS ANGELES and are responsible for the acts and omissions complained of herein.  Defendants DOES 1 through 10 are sued in both their official and individual capacities.

## FACTS

13.     On or about July 14, 2017, Mr. Schellenberg was on a public sidewalk at the intersection of Balboa and Nordhoff in the Northridge neighborhood of the City of Los Angeles.  He had his personal property with him as he had slept there the previous night, pursuant to the settlement in *Jones v. City of Los Angeles*, 444 F.3d 1118 (9th Cir. 2006).  That morning, Mr. Schellenberg packed his belongings, including his tent and suitcases, and neatly stored them on the sidewalk, directly adjacent to a clothing donation receptacle located on the same sidewalk.

14.     Mr. Schellenberg loaded a stroller with his most valuable belongings and began walking toward a nearby convenience store while pushing the stroller. As he walked in that direction and away from his other belongings, two LAPD officers (DOE 1 and DOE 2) stopped him and instructed him to return to the sidewalk with his stroller and the rest of his belongings.

15.     On information and belief, the LAPD officers called for a vehicle from the Los Angeles Department of Public Works, Bureau of Sanitation.  When Public Works employees arrived, the LAPD officers instructed the City employees to take all of Mr. Schellenberg's property, including the essential property he had placed in the stroller.  At the same time, City employees gave Mr. Schellenberg one, 60-gallon trash bag and told him that he could only keep those belongings that fit in the bag.

16.     While Mr. Schellenberg attempted to salvage some of his property, City employees simultaneously began seizing his property.  Mr. Schellenberg

objected to the City employees taking his property and repeatedly told them his property was not trash.  Still, City employees arbitrarily and capriciously decided which property would be seized.

17.    On information and belief, most of the property was thrown in the back of a green trash truck and immediately crushed by the garbage compressor. Some of his seized property was stored in the cab of the green truck.

18.    Mr. Schellenberg was left with was three torn suitcases filled with women's clothes that were donated to him and which he intended to distribute to unhoused women in need.  He had no opportunity to preserve different property more essential to his existence on the streets.

19.    Among the property that the Defendant City seized was Mr. Schellenberg's new Schwinn bicycle, a stroller that he used to transport his clothes and essential property, a laptop, and important personal papers such as his Section 8 Housing Voucher.  The Schwinn bicycle was Mr. Schellenberg's only mode of transportation and accommodated his disability.

20.    At the time of this incident, Mr. Schellenberg's property was maintained in a manner that objectively indicated it was not trash nor abandoned. At the time that the bicycle was seized, Mr. Schellenberg had removed one wheel and chained the wheel and bicycle to the stroller.  This is common practice of bicycle riders in public places   in order to prevent bicycle thefts.  The bicycle was fully operational when the wheel was attached.

21.    After City employees seized his property, Mr. Schellenberg asked the two LAPD officers where his property would be taken.  The LAPD officers did not tell him where he could retrieve his belongings.  Instead, the officers handed him paperwork related to the LAPD "H.O.P.E." Team.

22.    Following this event, Mr. Schellenberg searched online and discovered a phone number for the Department of Public Works, Bureau of Sanitation "unattended property" line.  He was informed that if any property was

stored by Public Works, it would be held at a storage facility located on Towne Avenue in Downtown Los Angeles.  The Towne Avenue facility is located almost 30 miles from the location at which Mr. Schellenberg's property was seized.  Traveling on public transportation from the west Valley to the Towne Avenue facility would take hours, a daunting task for an able-bodied person and an impossibility for Mr. Schellenberg with his mobility impairments.  No accommodation was available or offered by the Defendants to help him retrieve his personal property, if any, stored at the distant storage facility.

23.     Mr. Schellenberg made every effort to recover his property.  He telephoned the number he found online multiple times and was eventually able to speak by phone with a supervisor at the storage facility.  Mr. Schellenberg identified when and where his property was seized, but was informed him that no vehicle from that area brought in property on the day in question.

24.     On information and belief, Mr. Schellenberg believes that nearly all of his property seized in this incident was immediately and completely destroyed by City workers and that none of it was stored.   Approximately a month after he was told that none of his property was stored, City employees called Mr. Schellenberg and informed him that they found property that was mislabeled and asked him to describe the belongings that were taken.  After he identified some of the property as his own, City employees returned the property to him in the parking lot of a local Goodwill.  The only items returned to him were a tent, a blanket, and some clothing, but not his bicycle, laptop, personal documents including his Section 8 Voucher, or clothing and bedding seized on July 14, 2017.

25.     The loss of his personal papers is a significant hardship.  To obtain new paperwork for his Section 8 Housing eligibility, Mr. Schellenberg must travel downtown to the Housing Authority office.  If he does so, he risks leaving his property behind and having it seized and destroyed by the City once again.  This

cycle is prolonging and interfering with his efforts to obtain permanent supportive housing.

26.     This was not the first or the last time Mr. Schellenberg's property was seized.  Each time, his essential property such as tent, blankets, clothing, and canned food was taken and destroyed.

27.     On or about July 10, 2018, Mr. Schellenberg was residing on a public sidewalk near the intersection of Platt and Victory in the West Hills neighborhood of the City of Los Angeles.  His property was neatly stored on the sidewalk against the fence of a nearby drainage channel, adjacent to a Carl's Jr restaurant.

28.     A Department of Public Works trash truck and LAPD officers approached Mr. Schellenberg who was at the nearby Carl's Jr. parking lot.  Under the direction of LAPD "H.O.P.E. Team" Officer Garza, City employees seized Mr. Schellenberg's personal property that was stored near the fence and destroyed it in a garbage compressor.  In response to Mr. Schellenberg's protest that his property was not trash, Officer Garza told him that he would decide which property Mr. Schellenberg could keep.

29.     Once again, Mr. Schellenberg's essential property was unalterably destroyed.  Defendants seized his laptop, clothes, blankets and non-perishable food.  A small cart that Mr. Schellenberg used to transport his property was also seized and destroyed.

30.     By August 28, 2018, Mr. Schellenberg had only small amount of essential items that he neatly packed into a cart, as shown in the photograph below, Exhibit 1.  At the time, he was residing on the sidewalk at the intersection of Topanga Canyon Boulevard and Burbank Boulevard in the Woodland Hills neighborhood of the City of Los Angeles.  He kept this cart with him at all times, never leaving it unattended, to avoid another property confiscation.

FIRST AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15   Exhibit 1.

16        31.     On or about September 6, 2018, Mr. Schellenberg was still on the

17   sidewalk at Topanga Canyon Boulevard and Burbank Boulevard.  Previously,

18   Senior Lead Officer Denci of the LAPD Community Relations Division had

19   informed Mr. Schellenberg that he could maintain his personal property on the

20   sidewalk, so long as he did not obstruct pedestrian traffic.  Officer Denci

21   confirmed that if Mr. Schellenberg kept some property under a bus bench and his

22   push cart up against the fence, he would not be obstructing the sidewalk.  The

23   image shown below at Exhibit 2 accurately depicts the sidewalk and bus bench

24   located at the intersection of Topanga Canyon and Burbank.[1]

25
26
27
28

---

[1] Accessible at: https://www.google.com/maps/@34.1716939,-
118.6059561,3a,75y,285.02h,84.39t/data=!3m6!1e1!3m4!1sg2YvazvoR2HyPvmk96pTXA!2e0!7i16384!8i8192

9

FIRST AMENDED COMPLAINT



Image capture: Feb 2018    © 2019 Google

Exhibit 2.

32.    Mr. Schellenberg complied with the direction of Officer Denci. Exhibit 3 is a true and correct depiction of Mr. Schellenberg's property on September 6, 2018, located where Officer Denci stated it would be allowed.



Exhibit 3.

33.   On the morning of September 6, 2018, Officer Garza, together with five additional LAPD Officers, and Public Works employees, arrived at the intersection with a trash truck and a flatbed truck.  City employees confiscated Mr. Schellenberg's property from the location Officer Denci had directed it be placed and immediately destroyed it in the trash truck.  City employees did not place any of Mr. Schellenberg's property on the flatbed truck for storage.  Mr. Schellenberg was left with only a handful of items, all chosen at the discretion of City officials, and lost his essential property again.  Exhibit 4 is true and correct depiction of this incident.



Exhibit 4.

34.   On or about September 19, 2018 and October 23, 2018, City employees again seized Mr. Schellenberg's personal property while he was staying near the intersection of Ventura and Don Pio Drive in the Woodland Hills neighborhood of the City of Los Angeles.  He was once again stripped of his

essential property such as clothing, blankets, and food.  On information and belief, LAPD Officer Garza was involved in both of these incidents.

35.    Mr. Schellenberg is forced to move constantly around the San Fernando Valley to avoid further harassment by Defendants.  He uses a portion of his disability income to pay for a personal storage unit but cannot find a safe place to sleep that is near this storage unit.  As a result, he must keep some personal property with him to avoid multiple trips to his storage unit that is miles away from the nearest sidewalk he can sleep on.  Because the Defendant City continues to seize and summarily destroy his property, no matter how much he has or where it is, Mr. Schellenberg lives in constant fear of losing his essential items.

## MONELL ALLEGATIONS

36.    Based upon the principles set forth in *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), Defendant City of Los Angeles is liable for all injuries sustained by Plaintiff as set forth herein. Defendant City bears liability because its policies, practices and/or customs caused Plaintiff's injuries.  The City of Los Angeles and its officials maintained or permitted one or more of the following policies, customs, or practices:

    a.  Seizure and destruction of personal property without adequate pre- or post-deprivation notice and no accessible storage location;

    b.  Failure to provide adequate training and supervision to its employees with respect to constitutional rights involving seizure of personal property and due process of law; and

37.    Moreover, the Defendant City was on notice of the unlawfulness of their actions based on previous legal actions brought against the City for nearly identical operations.  In fact, just one year prior to the events giving rise to this action, the Defendant City was enjoined by the District Court from engaging in the very conduct that is complained of herein.

//

## EXHAUSTION OF ADMINSTRATIVE REMEDIES

38.    On January 11, 2018, Plaintiff filed a Government Tort Claim with the City of Los Angeles for the July 14, 2017 property seizure.  The Defendant City denied the claim in a letter dated March 5, 2018.  Plaintiff filed the instant action on September 3, 2018.

39.    From July 2018 to October 2018, the Defendant City engaged in at least four other property seizures, alleged at Paragraphs 27 through 37 of this First Amended Complaint.  Plaintiff filed a supplemental tort claim for these subsequent seizures on November 7, 2018.  The City has not made a final disposition of this claim; Plaintiff's claim has therefore been constructively denied pursuant to Cal. Gov't Code § 810 *et seq*.

## FIRST CAUSE OF ACTION
### Right to Be Secure From Unreasonable Seizures
### Fourth and Fourteenth Amendments (42 U.S.C. § 1983)
### California Constitution, Art. 1, § 13

40.    Plaintiff realleges and incorporates the allegations set forth in the proceeding paragraphs as though fully set forth herein.

41.    Defendant and its employees and agents violated Plaintiff's Fourth Amendment right to be free from unreasonable seizure of his property by confiscating and then destroying Plaintiff's property without a warrant.

42.    These unlawful actions were done with the specific intent to deprive Plaintiff of his constitutional right to be secure in his property.

43.    Plaintiff is informed and believes that the acts of the Defendant and its employees and agents were intentional in failing to protect and preserve Plaintiff's property and that, at a minimum, were deliberately indifferent to the likely consequence that the property would be seized and destroyed unlawfully, even though the right at issue was well-established at the time.

44.    As a direct and proximate consequence of these unlawful acts, Plaintiff has suffered and continues to suffer loss of his personal property and is entitled to compensatory damages for his property and personal injury.

### SECOND CAUSE OF ACTION
### Violation of the Takings Clause
### Fifth and Fourteenth Amendment (42 U.S.C. § 1983)
### California Constitution, Art. 1 § 19

45.    Plaintiff realleges and incorporates the allegations set forth in the proceeding paragraphs as though fully set forth herein.

46.    Defendant and its employees and agents seized and destroyed Plaintiff's property without offer or opportunity for compensation, in violation of the Takings Clause of the Fifth Amendment.

47.    As a direct and proximate consequence of these unlawful acts, Plaintiff has suffered and continues to suffer loss of his personal property and is entitled to just compensation for his property and personal injury.

### THIRD CAUSE OF ACTION
### Right to Due Process of Law
### Fourteenth Amendment (42 U.S.C. § 1983)
### California Constitution, Art. 1, § 7

48.    Plaintiff realleges and incorporates the allegations set forth in the proceeding paragraphs as though fully set forth herein.

49.    Defendant and its employees and agents owed a duty to Plaintiff under the due process clause of the Fourteenth Amendment to provide Plaintiff with adequate notice that his property was at risk of being seized and/or destroyed, and to preserve that property or provide adequate means of reclaiming it in a timely manner.

50.    These unlawful actions were done with the specific intent to deprive Plaintiff of his constitutional right to due process of law.

51.    Plaintiff is informed and believes that the acts of the Defendant and its employees and agents were intentional in failing to protect and preserve Plaintiff's property and that, at a minimum, were deliberately indifferent to the likely consequence that the property would be seized and destroyed unlawfully, even though the right at issue was well-established at the time.

52.    As a direct and proximate consequence of these unlawful acts, Plaintiff has suffered and continues to suffer loss of his personal property and is entitled to compensatory damages for his property and personal injury.

### FOURTH CAUSE OF ACTION
### Violation of 42 U.S.C. § 12101 et seq.
### Title II - Americans with Disabilities Act

53.    Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth hereat.

54.    Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be … denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

55.    At all times relevant to this action, Defendant, its employees and agents, were public entities within the meaning of Title II of the ADA and provided programs, services, or activity to the general public.

56.    At all times relevant to this action, Plaintiff was a qualified individual with one or more disabilities within the meaning of Title II of the ADA and met the essential eligibility requirements under Title II.

57.    Defendant's policies and practices in seizing and destroying Plaintiff's essential papers, mode of transportation and other important items have utilized methods of administration that violate Plaintiff's rights on the basis of his disabilities. 28 C.F.R. § 35.130(b)(3).

58.     The acts and omissions of the Defendant, its agents and employees, subjected the Plaintiff to discrimination on the basis of his disabilities in violation of Title II of the ADA by destroying his property, including a bicycle he uses for transportation because of his disability.

59.     Plaintiffs knew, or should have known, that the incidence of disabilities for people who are homeless is extremely high, with estimates as high as more than one in two homeless individuals suffering from some significant mental, medical or physical disability, and many, like Plaintiff, suffering from compound disabilities. On information and belief, Plaintiff alleges that Defendant could have reasonably retained Plaintiff's bicycle, critical personal papers, and other property in a location that was accessible to an individual with disabilities. As a public entity, Defendants are required to "make reasonable modifications in policies practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability" where, as here, modifications to would not "fundamentally alter the nature of the service, program or activity." 28 C.F.R. § 35.130(b)(7). This includes the need to make reasonable accommodations to protect the essential life-protecting and mobility assistive property of persons who are homeless, as well as provide prompt and reasonable access to ensure that individuals are able to recover seized property. The policies, practices and procedures challenged in this action, even if otherwise facially neutral, unduly burden disabled persons who are without shelter and within the federal definition of homeless.

60.     Defendant, its employees and agents, committed the acts and omissions alleged herein with intent and/or reckless disregard for the rights of Plaintiff.

61.     Plaintiff is informed and believes that Defendant and its agents and employees have failed and continue to fail to adopt and enforce adequate policies and procedures for interacting with homeless individuals with disabilities.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## FIFTH CAUSE OF ACTION
### Violation of Unruh Civil Rights Act
### Cal. Civ. Code § 51

62.     Plaintiff realleges and incorporates the allegations set forth in the proceeding paragraphs as though fully set forth herein.

63.     California Civil Code 51 et seq. provides in pertinent part that: "All persons within the jurisdiction of this state are free and equal, and no matter what their … disability … are entitled to the full and equal … privileges, or services in all business establishments of every kind whatsoever."

64.     Defendant, through its agents and employees in the LAPD and Department of Public Works, is a "business establishment" within the meaning of § 51.

65.     The acts and omissions complained of herein denied Plaintiff his right to be free from discrimination on the basis of his disability, and were done with intent or reckless disregard for Plaintiff's rights as a disabled individual.

66.     As a direct and proximate consequence of these unlawful acts, Plaintiff has suffered and continues to suffer loss of his statutory rights and is entitled to statutory damages pursuant to California Civil Code §§ 52 and 52.1. Plaintiff is also entitled to an injunction pursuant to Cal. Civ. Code § 52.1.

## SIXTH CAUSE OF ACTION
### Violation of Bane Civil Rights Act
### Cal. Civ. Code § 52.1

67.     Plaintiff realleges and incorporates the allegations set forth in the proceeding paragraphs as though fully set forth herein.

68.     Defendant's agents and employees have used arrests, threats of arrest and intimidation to interfere with Plaintiff's rights to maintain their personal possessions in the exercise of Plaintiffs' rights secured by the Constitution of the

17

United States, the Constitution of the State of California, and the statutory laws of the State of California.

69.    As a direct and proximate consequence of these unlawful acts, Plaintiff has suffered and continues to suffer loss of his statutory rights and is entitled to statutory damages pursuant to California Civil Code §§ 52 and 52.1. Plaintiff is also entitled to an injunction pursuant to Cal. Civ. Code § 52.1.

**SEVENTH CAUSE OF ACTION**
**Violation of Cal. Civ. Code § 2080 et seq.**

70.    Plaintiff realleges and incorporates the allegations set forth in the proceeding paragraphs as though fully set forth herein.

71.    Defendant's policies, practices, and conduct challenged herein violated California Civil Code § 2080 et seq., in that Defendant's agents and employees failed to protect and preserve Plaintiff's personal property when the property was on the public sidewalk, failed to provide written notice that the property would be taken, and failed to provide post-deprivation notice so that Plaintiff would have the opportunity to reclaim it within a reasonable time.

72.    Cal. Civ. Code § 2080 et seq. imposes a mandatory duty to maintain property that is not abandoned.

**INJUNCTIVE RELIEF**

73.    Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

74.    A real and immediate difference exits between Plaintiff and Defendant regarding Plaintiff's rights and Defendant's duty owed to Plaintiff to protect Plaintiff's personal property present on the public sidewalks and streets of the City of Los Angeles.  Defendant's policies and actions have resulted and will result in irreparable injury to Plaintiff.

75.    There is no plain, adequate, or complete remedy at law to address the wrongs described herein.  The Defendant City has made it clear that it intends to

continue these practices of confiscating and immediately destroying the property of homeless individuals from the public streets and sidewalks without a warrant, without pre- and post- deprivation notice, and without just compensation.  Unless restrained by this Court, Defendant will continue to implement this policy and practice.

76.     As a direct and proximate consequence of the acts of Defendant's Plaintiff has and will continue to suffer damages through injury to his person and the loss of his personal property, including bedding, clothing, medication, tents, tarts, personal papers, and other personal possessions.  Plaintiff claims that these acts are contrary to law and seeks a declaration of his rights with regard to this controversy.

## PRAYER FOR RELIEF

77.     Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

**WHEREFORE**, Plaintiff prays as follows:

1.     For a declaratory judgment that Defendant's policies, practices and conduct as alleged herein violate Plaintiff's rights under the United States and California Constitutions and the laws of California;

2.     For an order enjoining and restraining Defendant from engaging in the policies, practices, and conduct complained of herein;

3.     For damages according to proof and on the basis of minimum statutory amounts recoverable under California law for the loss of Plaintiff's property, the violation of his constitutional rights, and for pain and suffering resulting from the unlawful conduct of Defendant;

4.     For costs of suit and attorney fees as provided by law;

5.     For such other relief as the Court deems just and proper.

1

## DEMAND FOR JURY TRIAL

2      Plaintiff hereby respectfully demands that a trial by jury be conducted with

3  respect to all issues presented herein.

4

5

6  Dated:  January 18, 2019          Respectfully submitted,

7                                    LAW OFFICE OF CAROL A. SOBEL

8

9                                        /s/ Carol A. Sobel

10                                   By:  Carol A. Sobel

11                                   Attorneys for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28